James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ANGELA ANDERSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DARREN HARDY, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Angela Anderson ("Plaintiff" or "Anderson"), individually, and on behalf of all others similarly situated, through her undersigned counsel, and for her Class Action Complaint against Defendant, Darren Hardy, LLC ("Defendant" or "Darren Hardy"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Plaintiff brings this case to protect her privacy rights; namely, the right to be left alone from unwanted telemarketing communications.

2. Plaintiff brings this suit in an effort to stop companies like Defendant from sending text messages to her and the putative class (defined below) members' phones despite the fact that Plaintiff and the putative class members phone numbers were registered on the National Do-Not-Call Registry ("DNC List"). Such communications violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

3. When persons like Plaintiff and the putative class members have their phone numbers registered on the DNC List, companies like Defendant have an affirmative obligation not to contact such persons with telephone solicitations, in accordance with the TCPA's protections. The TCPA provides that each person who receives such communications despite being on the DNC List is entitled to up to $500 per violation, and up to $1,500.00 per violation determined to be willful.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Anderson, frequently face. For example, in January through November 2025 alone, approximately 48.3 billion robocalls were

placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited December 9, 2025).

6. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7. In fact, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

8. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because it transacts business in California, directly markets its products and services in California, and sells various products and services in California, and for the reasons otherwise set forth in this Complaint.

11. Defendant has continuous and systematic contacts with the State of California.

12. Anderson was (and is) a resident and citizen of Los Angeles, California at all times relevant to this Complaint.

13. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

## PARTIES

14. At all times relevant to this Complaint, Anderson was, and is still, the owner of a cell phone, with a phone number of 310-XXX-5417.

15. Anderson registered her phone number on the DNC List on August 17, 2010, for the purpose of being not contact by telemarketers/telephone solicitors, including, but not limited to, Defendant.

16. The monthly bill associated with Anderson's phone number is issued in her name, and not in the name of a business.

17. Anderson uses her cell phone primarily for personal purposes, such as communicating with friends and family members.

18. Defendant, Darren Hardy, LLC is a Florida Limited Liability Company, with its principal place of business in Miami Beach, Florida. Defendant has at all times relevant to this Complaint been in good standing to transact business in the State of California, and throughout the United States.

19. Defendant's website is www.darrenhardy.com.

20. Defendant's website offers a variety of products and services for sale.

21. Defendant's website offers books for sale that pertain to multiple topics such as entrepreneurship, goal setting and achievement.

22. Defendant's website also sells a "Business Master Class." On information and belief, Defendant's classes range from a cost of hundreds of dollars to thousands of dollars.

23. Defendant markets its products and services, in part, through telemarketing, including sending text messages.

**DEFENDANT'S TEXT MESSAGES TO PLAINTIFF**

24. Anderson never inquired of, or expressed interest in, Defendant's products or services. On information and belief, neither did the putative class members.

25. Anderson was never a previous customer of Defendant, nor did she have an established business relationship with Defendant. On information and belief, neither did the putative class members.

26. Anderson never entered her information on Defendant's website, nor provided any form of consent to be contacted by or on behalf of Defendant.

27. Despite being registered on the DNC List for over a decade and not inquiring of or expressing interest in Defendant's services, Anderson began to receive text messages from or on behalf of Defendant.

28. On October 16, 2024, at 10:36 a.m., Defendant sent Anderson a text message, stating:

> Special limited offer! INSANE PRODUCTIVITY awaits. $165 today = game-changing results tomorrow. Don't miss out: https://bit.ly/3WDdUuo
>
> (Reply STOP to cancel)

29. On December 31, 2024, at 1:20 p.m., Defendant sent Anderson a text message, stating:

> Last chance for your 2024 tax deduction! Join JUMPSTART now and transform your 2025. Slktxt.io/148li

30. On January 17, 2025, at 11:10 a.m., Defendant sent Anderson a text message, stating:

> ALERT! ONE HOUR! The doors to JUMPSTART are closing! We

want you with us! Hurry here before it's too late: Slktxt.io/14l6k

31. On April 1, 2025, Defendant sent a text message, stating:

> While everyone's TALKING about AI, I'm actually USING it to generate actual revenue. On April 3rd, I'm revealing EXACTLY how I added $5M in expert skills to my org chart WITHOUT hiring anyone. See the real systems cutting our costs by 47% while driving 3X growth. WARNING: Live seats limited. FREE AI opportunity Audit Tool ($295 value) for live attendees only. NO RECORDING is provided so please make the time to be there. 10AM/PT/1PM ET on Thursday. Register your seat here: slktxt.io/16WbK

32. On April 3, 2025, at 8:05 a.m., Defendant sent a text message to Anderson stating:

> STARTING IN 2 HOURS: Darren pulls back the curtain on our AI systems! A rare behind-the-scenes look at how we're 3X'ing revenue. Register now: slktxt.io/16YKf

33. On April 21, 2025, at 10:02 a.m., Defendant sent Anderson a text message stating:

> URGENT: I recorded a quick message for you that kept me up all weekend. It's only 2 mins but could change everything for your business. Watch: slktxt.io/17pxX

34. On April 23, 2025, at 8:03 a.m., Defendant sent Anderson a text message, stating:

> FINAL AI PROFIT ACCELERATION starts in ONE HOUR! This is your LAST CHANCE to get the system for 10X team performance. Grab your spot now: slktxt.io/17sCz

35. On April 24, 2025, at 12:03 p.m., Defendant sent Anderson a text message, stating:

> 24 HOURS LEFT! The $2,000 cash gift toward your Business Master Class seat ends tomorrow, Fri., April 25th at 12PM PT. Go now before it's gone: Slktxt.io/17uEt

36. On April 25, 2025, at 11:07 a.m., Defendant sent Anderson a text message, stating:

> ONE HOUR LEFT! Darren's gift of $2,000 toward your Business Master Class ends TODAY at 12 PM PT! Go here to cash it in: Slktxt.io/17wc1

37. On April 28, 2025, at 10:05 a.m., Defendant sent Anderson a text message, stating:

> Unexpected opportunity! We're hosting Darren's AI Profit Accelerator ONE MORE TIME! Tues, April 29th at 6AM PT | 9AM ET. Secure your seat: Slktxt.io/17Byn

38. On May 1, 2025, at 12:06 p.m., Defendant sent Anderson a text message, stating:

> MAYDAY! MAYDAY! 24 HOURS LEFT! The doors to BMC close TOMORROW AT 12PM PT | 3 PM ET. Last chance to access our MVP AI Portal for a year. Go: Slktxt.io/17GAf

39. On May 2, 2025, at 11:05 a.m., Defendant sent Anderson a text message, stating:

> 1 HOUR LEFT! The doors to BMC close TODAY at 12PM PT | 3 PM ET. This is your final chance to join us. Don't get left behind! Go here now: Slktxt.io/17l5l

40. On May 2, 2025, at 11:05 a.m., Defendant sent Anderson a text message,

stating:

> 1 HOUR LEFT! The doors to BMC close TODAY at 12PM PT | 3 PM ET. This is your final chance to join us. Don't get left behind! Go here now: Slktxt.io/17l5l

41. On June 11, 2025, at 1:40 p.m., Defendant sent Anderson a text message, stating:

> Ready to discover your true purpose? Final Success One-Sheet Workshop! Tomorrow, June 12 at 7AM PT | 10AM ET. Reserve your seat here: Slktxt.io/19rTG

42. On July 3, 2025, at 11:00 a.m., Defendant sent Anderson a text message, stating:

> Claim FREEDOM from mediocre results! Let's huddle (~20 mins) to create your second-half attack plan before celebrating this weekend: Slktxt.io/1a1PV

43. On September 9, 2025, at 2:42 p.m., Defendant sent Anderson a text message, stating:

> Darren Hardy here. Urgent briefing Tues, Sept. 16th at 10AM PT. I'll show you 3 fixes to protect and grow your margins. https://dh.darrenhardy.com/profit/ceos

44. On September 16, 2025, at 8:04 a.m., Defendant sent Anderson a text message, stating:

> 2 HOURS until The Great Profit Squeeze Briefing with Darren Hardy. Registration closes soon. Secure your seat ASAP. https://dh.darrenhardy.com/profit/ceos

45. On September 16, 2025, at 9:30 a.m., Defendant sent Anderson a text message, stating:

> 30 MINUTES! until The Great Profit Squeeze Briefing with Darren Hardy. Registration closes soon. Secure your seat ASAP before doors close: https://dh.darrenhardy.com/profit/ceos

46. On September 17, 2025, at 10:08 a.m., Defendant sent Anderson a text message, stating:

> New Profit Squeeze Livestream added! Tomorrow, Thurs., Sept. 18th at 7AM PT | 10AM ET. Spots are filling fast: https://dh.darrenhardy.com/profit/ceos

47. On September 22, 2025, at 10:03 a.m., Defendant sent Anderson a text message, stating:

> Tomorrow at a NEW time! The Great Profit Squeeze Livestream: September 23rd at 4PM PT | 7PM ET. We planned this one for you! https://dh.darrenhardy.com/profit/ceos

48. On September 23, 2025, at 2:02 p.m., Defendant sent Anderson a text message, stating:

> 2 HOURS until The Great Profit Squeeze begins! Join us as you're closing the final tabs for the day. 4PM ET | 7 PM ET. https://dh.darrenhardy.com/profit/ceos

49. On September 24, 2025, at 1:02 p.m., Defendant sent Anderson a text message, stating:

> FINAL WEEK! The Great Profit Squeeze: Thurs, Sept 25th at 7AM PT | 10AM ET. Reserve your seat before it's gone for good! https:/dh.darrenhardy.com/profit/ceos

50. On September 25, 2025, at 12:38 p.m., Defendant sent Anderson a text message, stating:

> Only ONE MORE CHANCE to catch The Great Profit Squeeze before it's gone. Sat, Sept 27th at 7PM PT | 10AM ET. Be there! https:/dh.darrenhardy.com/profit/ceos

51. On September 26, 2025, at 2:09 p.m., Defendant sent Anderson a text message, stating:

> Darren Hardy here! Does running a business feel like this lately? I can help. Watch this quick video to see what I mean. https://www.videoask.com/fcezepmwc

52. The links contained in the text messages either: (1) direct or directed a person to various websites owned and/or operated by Defendant that state "Darren Hardy, LLC" at the bottom; (2) include the name "Darren Hardy" in the domain name and include a picture of Darren Hardy; or (3) include a video of Darren Hardy.

53. These websites market various products and services from Defendant.

54. Anderson seeks recovery individually, and on behalf of the putative class members, for the text messages they received from or on behalf of Defendant despite having their phone numbers registered on the DNC List.

## DIRECT AND VICARIOUS LIABILITY

55. Without the benefit of discovery, and because Defendant disclosed its identity in the text messages at issue, Anderson assumes Defendant directly sent the text messages at issue.

56. However, if some or all the text messages were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those text messages.

57. On May 9, 2013, the FCC determined that telemarketers like Defendant

could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

58. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

59. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

60. If Defendant directly sent the text messages at issue to Anderson and the putative class members, Defendant is directly liable for the sending of those text messages.

61. However, Defendant may have hired, encouraged, permitted, and enjoyed

the benefits of mass telemarketing by third-party telemarketers.

62. If Defendant did not directly send the text messages to Anderson and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

63. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

64. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

65. Defendant acted as principals to telemarketing agent(s) who were acting on their behalf.

66. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their captive agents' TCPA violations.

67. For the count identified below, if Defendant directly sent the violative communications at issue to Anderson and the putative class members, it is directly liable. Alternatively, to the extent any text messages were sent/placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## **CLASS ALLEGATIONS**

68. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself, and all others similarly situated. This action satisfies the requirements of Rule 23.

69. Anderson seeks to represent the following class (the "Class"):

**DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1)

> to whom Defendant (or someone acting on its behalf) placed two or more text messages during a 12-month period; (2) where the calls were made for solicitation purposes, (3) whose number was registered on the DNC List for more than 31 days at the time the calls were placed; (4) where the phone number to which the calls were placed was registered to an individual, rather than a business.

70. Anderson reserves the right to add administrative subclasses, or to amend the definition of the proposed Class, as this lawsuit proceeds.

71. The members of the proposed Class are so numerous that joinder of all members is impracticable. Anderson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed Class are readily identifiable through records available to Defendant or those acting on their behalf.

72. Most members of the proposed Class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

73. On information and belief, Defendant has texted, and continue to text, people whose numbers should have been placed on the DNC List. It is reasonable to expect that Defendant will continue to place such text messages, absent this lawsuit.

74. Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed Class include, but are not limited to:

a. Whether the calls at issue qualify as "telephone solicitations" for the purposes of 47 U.S.C. § 227(c);

b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA;

c. Whether an agency relationship exists between Defendant and anyone placing calls on its behalf;

d. Whether Defendant's manner and system of obtaining consumer

"consent" was legally deficient;

e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

f. Whether Defendant and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

75. Anderson's claims are typical of the claims of the members of the proposed Class members because her claims arise from the same practices that give rise to the claims of the members of the proposed Class and are based on the same legal theories.

76. Anderson and her counsel will fairly and adequately protect the interests of the members of the proposed Class. Anderson's interests do not conflict with the interests of the proposed Class she seeks to represent, and she has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

77. Anderson's counsel will vigorously litigate this case as a class action.

78. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed Class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed Class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed Class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

79. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

80. Questions of law and fact, particularly the propriety of placing text

messages to persons whose phone numbers were registered on the DNC List predominate over questions affecting only individual members.

81. Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

**COUNT I**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c), *et seq.* (DNC List Violations)**

82. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

83. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

84. This applies to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

85. The penalty for each telephone solicitation placed in violation of the TCPA's restrictions on placing calls to phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

86. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting phone calls to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

87. By placing telephone solicitations to Anderson and the putative DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

88. Defendant and/or those acting on their behalf knew or should have known that Anderson's and the putative DNC Class members' phone numbers were registered on the DNC List.

89. Defendant and/or those acting on their behalf willfully violated the TCPA when placing the telephone solicitations at issue to Plaintiff's and the putative DNC Class members' phones.

90. Anderson and the putative class members are entitled to damages of up to $500.00 per violation for each communication by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Angela Anderson, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed DNC Class, appointing Plaintiff as the Class representative, and appointing his counsel as class counsel;

b. Enter judgment against Defendant and in favor of Plaintiff and the Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the DNC Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the DNC Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Angela Anderson demands a jury trial.

Dated: December 23, 2025

Respectfully submitted,

MILLER SHAH LLP

*/s/James C. Shah*
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*